UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

      Angela's Bridals, Inc.                              Chapter 11
                                                     Case No. 25-

                              Debtor.

MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER: (A) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL ON AN INTERIM BASIS, (B) GRANTING ADEQUATE PROTECTION PURSUANT TO SECTIONS 105, 361 AND 363 OF THE BANKRUPTCY CODE, AND (C) SCHEDULING INTERIM AND FINAL HEARINGS FOR APPROVAL OF THE DEBTOR'S CONTINUED USE OF CASH COLLATERAL

      Angela's Bridals, Inc., the above-captioned Debtor and Debtor-in-Possession (hereinafter, the "Debtor"), by and through its undersigned proposed counsel, hereby move this Court (this "Motion") for entry of an Interim Order, in substantially the form attached hereto as Exhibit A (the "Interim Order"), (a) authorizing the Debtor's use of cash collateral on an interim basis, (b) granting adequate protection pursuant to sections 105, 361 and 363 of title 11 of the United States Code (11 U.S.C. §§ 101 et seq., the "Bankruptcy Code"), and (c) scheduling further hearings to consider entry of a final order approving the Debtor's continued use of cash collateral (the "Final Order"). In support of this Motion the Debtor respectfully represent as follows:

JURISDICTION

      1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

      2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

      3.      The statutory and rule-based predicates for the relief requested herein are sections 105, 361 and 363 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      On February <u>4</u>, 2025 (the <u>"Petition Date"</u>), Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the <u>"Court"</u>).

5.      At the Petition Date, the Debtor elected to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code.

6.      The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No request for a trustee or examiner has been made in this Chapter 11 Case, and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

8.      The factual background relating to the Debtor's commencement of this Chapter 11 Cases is set forth in detail in the *Declaration of Janet M. Cooper In Support of First Day Relief and Petition* filed on the Petition Date and incorporated herein by reference.

9.      **Prior to the commencement of this Case, Debtor, through its Proposed Counsel, received consent of Pursuit Lending, through their Counsel, Paul Levine, Esq., to Debtor's use of Cash Collateral predicated on Debtor's proposal of ongoing contractual payments to Pursuit.**

## STATEMENT PURSUANT TO RULE 4001(b)(l)(B)

10.     The Debtor provides the following summary of the material provisions of this Motion pursuant to Bankruptcy Rule 4001(b)(l)(B):

>     (i)      The Pre-Petition Secured Creditor(s) who have a purported interest in the Cash Collateral are: (1) Pursuit Lending (hereinafter, "Pursuit"); (2) the Small Business Administration (hereinafter, the "SBA"); (3) Gravity Payments, Inc. ("Gravity"); (4) CHTD Company ("CHTD")[1]; (4) Broadview Federal Credit Union ("Broadview"); (5) Corporation Service

---

[1] Upon information and belief, CHTD filed its UCC on behalf of Creditor PayPal Working Capital.

Representative ("CSC")[2]; (6) CSC[3]; (7) CSC[4]; (8) Funding Metrics, LLC ("FM"); and CSC[5].

(ii)    From a UCC search performed as of February 3, 2025, Debtor has the following UCC's filed against it with regard to its cash and cash equivalents:

    a.    Pursuit, filed on April 18, 2019 and continued on November 3, 2023;

    b.    SBA, filed on July 25, 2020;

    c.    Gravity, filed on May 27, 2021;

    d.    CHTD (PayPal), filed on September 16, 2022;

    e.    Broadview, filed on April 18, 2023;

    f.    CSC (Itria), filed on August 17, 2023;

    g.    FM, filed on October 11, 2023; and

    h.    CSC (Fora), filed on August 8, 2024.

(collectively, the "Purported Pre-petition Secured Creditors")

(iii)    The Debtor seeks authorization to use Cash Collateral in order to pay employee wages and other necessary ordinary course operating expenses as well as administrative expenses incurred in these Chapter 11 Cases

(iv)    The Debtor is seeking interim authorization to use Cash Collateral through such time as the Court holds a final hearing on the Debtor's Cash Collateral Motion (approximately, March, 2025) pursuant to the Budget attached to the Interim Order and continued use of Cash Collateral pursuant to future Budgets and Interim and Final Orders.

(v)    In order to adequately protect the Pre-Petition Secured Creditors' interest in the Cash Collateral, the Debtor is proposing to continue to operate its businesses, provide certain adequate protection payments, periodic reporting and other protections as described herein.

## THE DEBTOR'S PRE-PETITION SECURED INDEBTEDNESS

11.    As of the Petition Date, upon information and belief, the Debtor is indebted to secured creditors SBA pursuant to the following transactions and documents:

(i)    In or around April, 2019, Debtor executed and delivered a term note to

---

[2] Upon information and belief, CSC filed its UCC on behalf of Creditor Itria Ventures, LLC.
[3] Upon information and belief, this is a duplicate UCC of CSC's lien at FN 2.
[4] Upon information and belief, this is a duplicate UCC of CSC's lien at FN 3.
[5] Upon information and belief, CSC filed its UCC on behalf of Creditor Fora Financial .

Pursuit with a current outstanding balance of approximately $2,000.00.

(ii)    In or around July, 2020, Debtor executed and delivered certain loan documents to SBA with a current outstanding balance of approximately $327,000.00.

(iii)    In or around June, 2020, Debtor executed and delivered certain contract documents to Gravity with a current outstanding balance of approximately $27,000.00;

(iv)    In or around September, 2022, Debtor executed certain contract documents to PayPal with a current outstanding balance of approximately $23,000.00.

(v)    In or around April, 2023, Debtor executed certain loan documents to Broadview, with a current outstanding balance of approximately $15,000.00;

(vi)    In or around August, 2023, Debtor executed certain contract documents to Itria, with a current outstanding principal balance of approximately $30,000.00.

(vii)    In or around October, 2023, Debtor executed certain contract documents to FM, with a current outstanding principal balance of approximately $23,000.00.

(viii)    In or around August, 2024, Debtor executed certain contract documents to Fora, with a current outstanding principal balance of approximately $27,980.00.

## RELIEF REQUESTED

12.    The Debtor seeks to use cash existing on or after the Petition Date that may be

part of the Pre-Petition Collateral (the "Cash Collateral"). The Debtor hereby requests that the

Court grant the following relief:

(i)    authorize the Debtor, pursuant to section 363(c) of the Bankruptcy Code, to use Cash Collateral in accordance with the budget attached to the proposed Interim Order and such additional budgets as may be agreed to from time to time by the Debtor and KeyBank or approved by the Court (collectively, the "Budget");

(ii)    authorize the Debtor, pursuant to sections 361 and 363 of the Bankruptcy Code, to provide adequate protection to the Pre-Petition Secured Creditors as set forth in the Interim Order; and

      (iii)     schedule additional hearings to consider entry of further Interim Orders and a Final Order approving the Debtor's continued use of Cash Collateral.

BASIS FOR RELIEF

A.     The Debtor Has an Immediate Need to Use Cash Collateral

13.    The Debtor has an urgent need to use Cash Collateral pending the final hearings on this Motion. As of the Petition Date, the Debtor has no unencumbered cash that can be used to fund their business operations and pay operating expenses.

14.    The Debtor operates as an ongoing concern, which will generate future revenue to continue operations Post-Petition; however, current cash on hand is completely collateralized by the Pursuit's first Position UCC and SBA's second Position UCC.

15.    Absent the ability to immediately use Cash Collateral, the Debtor's ability to pay ongoing, necessary post-petition expenses (e.g. insurance, wages, utility charges, and other critical operating expenses) will be severely hampered.

16.    If the Debtor cannot obtain sufficient operating liquidity to meet its Post-Petition obligations on a timely basis it will be forced to discontinue operations resulting in a permanent and irreplaceable loss of business, and therefore value, to the detriment of the Debtor, its estate, secured and unsecured creditors and other parties in interest.

17.    This potential loss of revenue and going concern value would be extremely harmful at this critical juncture and could jeopardize the Debtor's ability to maximize the value of its assets and operations in this Chapter 11.

18.    Debtor operates a brick and mortar bridal shop that sells dresses and other accessories.

19.    Daily sales realized by Debtor are collected in various merchant transaction accounts

which are then swept daily into its operating account.

20.    Debtor has very modest cash on hand at the time of filing and believes post-petition sales will quickly replenish its cash reserves, but at the outset of the bankruptcy, Debtor has an immediate need for use of its cash collateral.

B.    <u>The Interests of Pre-Petition Secured Creditors Are Adequately Protected</u>

21.    Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may only use "cash collateral" with the consent of the secured party with an interest therein or court approval. See 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in cash collateral, the court shall prohibit or condition such use of cash collateral as is necessary to provide adequate protection of such entity's interest. See 11 U.S.C. § 363(e).

22.    Appropriate adequate protection is decided on a case-by-case basis. See e.g., <u>In re Snowshoe Co.</u>, 789 F.2d 1085, 1088 (4th Cir. 1986); <u>In re Mose/lo</u>, 195 B.R. 277,289 (Bankr. S.D.N.Y. 1996); <u>In re Beker Indus. Corp.</u>, 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also <u>In re JKJChevrolet, Inc.</u>, 190 B.R. 542,545 (Bankr. E.D. Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case) (citing <u>In re O'Connor</u>, 808 F.2d 1393, 1396-97 (10th Cir. 1987)).

23.    Although adequate protection is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides the following three (3) nonexclusive examples of what may constitute adequate protection:

(i)    requiring the [debtor] to make a cash payment or periodic cash payments to such entity, to the extent that the ... use ... under section 363 ... results in a decrease in the value of such entity's interest in such property;

(ii)    providing to such entity an additional or replacement lien to the extent that such ... use ... results in a decrease in the value of such entity's interest in such property; or

(iii)    granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

24.     Essentially, with the provision of adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. See In re Hubbard Power & Light, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996); In re 495 Cent. Park Ave. Corp., 136 RR. 626,631 (Bankr. S.D.N.Y. 1992); Beker Indus., 58 B.R. at 736; see also In re Nice, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral").

25.     The Debtor asserts that the Pre-Petition Secured Creditors will be adequately protected by periodic payments, the continuation of the Debtor's businesses, and the other forms of protection described below.

<u>The Proposed Adequate Protection</u>

26.     In order to adequately protect the interest of the Pre-Petition Secured Creditors, in the Cash Collateral, the Debtor proposes to provide the following forms of adequate protection (collectively, the <u>"Adequate Protection"</u>).

27.     At the time of filing, Debtor has approximately $56,000.00 in cash and cash equivalents, including accounts receivable, cash on hand, and cash in the Debtor's various Bank Accounts.

28.     As such, every creditor discussed *supra* at ¶¶ 9-10, other than Pursuit (who is fully secured) and the SBA (who is partially secured) is completely undersecured as it relates to Debtor's cash and cash equivalents.

29.     <u>Ongoing Payments</u>.

(i)     The Debtor proposes to pay Pursuit adequate protection payments in the amount of <u>$663.62</u>, monthly. Said amount represents the contractual

monthly payment due to Pursuit and should be paid off in 3.5 months based on contract terms.

(ii)   The Debtor proposes to pay SBA adequate protection payments in the amount of $994.49, monthly. Said amount represents SBA's secured position on Debtor's cash and cash equivalents (approximately $54,000.00) paid at 4% interest and amortized over a 5-year term. Debtor submits that the proposed adequate protection is reasonable and satisfactory to protect SBA's interest as it would pay .75% above contractual interest and would help reduce Debtor's debt to SBA while the Debtor prepares a Plan of Reorganization.

(iii)  Upon information and belief, the remaining Purported Pre-petition Secured Creditors as junior lien holders, have no equity in Debtor's cash or cash equivalents at the time of filing and, as such, will not receive ongoing adequate protection payments for use of the cash collateral.

30.   <u>Continued Operation of the Debtor's Business.</u> The Pre-Petition Secured Creditors will be additionally protected as a result of the continued operation of the Debtor's business operations. Without the use of the Cash Collateral, the Debtor would forego business opportunities and its operations would be irreparably harmed.

31.   Absent use of the Cash Collateral, the Debtor likely will be unable to pay its ordinary business expenses, including employee wages. Failure to make such payments would significantly jeopardize the Debtor's ability to maintain their businesses and continue their operations. The Debtor believes that the going concern value of their businesses is significantly greater than their liquidation value. As such, the Debtor continued operation likely presents the best opportunity for the Pre-

Petition Secured Creditors to receive the greatest recovery on account of their claims.

32.     Accordingly, the Debtor submits that use of the Cash Collateral will allow the Debtor to continue their operations and, thereby, protect the Pre-Petition Secured Creditors' interests. See, e.g., In re 499 W Warren St. Assocs., Ltd P'ship, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (secured creditor's interest in collateral was adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); In re Willowood E. Apartments of Indianapolis II, Ltd, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); In re Aqua Assocs., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

C.     Interim Approval Should be Granted

33.     The Debtor has formulated the Budget attached to the proposed Interim Order for the use of Cash Collateral from the Petition Date through the week of March 7, 2025. The Debtor believes that the Budget includes only (i) such reasonable, necessary and foreseeable expenses to be incurred in the ordinary course in connection with the operation of their businesses, and (ii) such administrative expenses to be incurred in connection with these Chapter 11 Cases that will become due and payable during the period covered by the Budget.

34.     The Debtor respectfully requests that the Court conduct an interim hearing on this Motion and authorize the Debtor (from and after the entry of any Orders and pending the hearing to consider entry of a Final Order) to use Cash Collateral in accordance with the Budget. Interim access to the Cash Collateral will ensure that the Debtor is able to avoid immediate and irreparable harm pending the hearings to consider entry of the Interim Order and Final Order.

35.     Bankruptcy Rule 4001(b)(2) governs the procedures for obtaining approval to use

cash collateral and it provides:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed R. Bankr. P. 4001(b)(2).

36.    After the final hearing, Bankruptcy Rule 4001(b) does not limit the use of cash collateral solely to those amounts necessary to prevent immediate and irreparable harm to the estate, and the debtor may use such amounts as it deems prudent in the operation of its business. *Cf* <u>In re Ames Dep't Stores, Inc.</u>, 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) (approving at the final hearing debtor in possession financing in excess of what had been held to be "necessary to avoid immediate and irreparable harm" at the interim hearing). The Debtor submits that, for the reasons set forth herein, immediate access to Cash Collateral in the amounts set forth in the Budget is necessary to preserve the value of the Debtor's estate for the benefit of all parties in interest.

D.    Request for Final Hearings

37.    Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that the Court schedule interim and final hearings to consider entry of the Final Order. The Debtor further requests that the hearing to consider entry of the Final Order approving the Debtor's continued use of Cash Collateral be held no later than thirty (30) days after the Petition Date.

<u>WAIVER OF NOTICE AND STAY REQUIREMENTS</u>

38.    To implement the foregoing successfully, the Debtor seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

<u>NOTICE</u>

39.     Notice of this Motion will be given to (i) the Office of the United States Trustee for the Northern District of New York, (ii) the Purported Pre-petition Secured Creditors, (iii) the Debtor's twenty (20) largest unsecured creditors as set forth in the consolidated list filed with the Debtor's petitions, (iv) all required governmental agencies and (v) the Subchapter V Trustee, should one be appointed prior to service deadlines as set by the Court.

40.     In light of the nature of the relief requested herein, the Debtor submits that no further notice is required.

WHEREFORE, the Debtor respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein on an interim basis, scheduling additional hearings to consider entry of a Final Order and granting such other and further relief as the Court deems appropriate.

Dated:  February 4, 2025
  Albany, New York               BOYLE LEGAL, LLC


                       By:/s/Michael L. Boyle_____
                         Michael L. Boyle
                         *Proposed Attorney for Debtor and Debtor-in-Possession*
                         64 2nd Street
                         Troy, New York 12180
                         mike@boylebankruptcy.com
                         518-407-3121

## EXHIBIT A
Proposed Interim Order

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

    Angela's Bridals, Inc.

                 Debtor.

Chapter 11
Case No. 25-

INTERIM ORDER (A) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL, (B)
GRANTING ADEQUATE PROTECTION PURSUANT TO §§ 105, 361 AND 363 OF THE
BANKRUPTCY CODE, AND (C) SCHEDULING FURTHER PROCEEDINGS FOR APPROVAL
OF THE DEBTOR'S CONTINUED USE OF CASH COLLATERAL

Upon consideration of the motion, dated February 3, 2025, of Angela's Bridals, Inc. (the

"Debtor") by and through its counsel, for entry of an interim order (this "Interim Order") (a)

authorizing the Debtor's use of Cash Collateral (defined below) on an interim basis, (b) granting

adequate protection pursuant to §§ 105, 361 and 363 of title 11 of the United States Code (11

U.S.C. §§ 101 et seq., the "Bankruptcy Code"), and (c) scheduling further proceedings to consider a

final order (the "Final Order") granting the relief requested in the Motion and approving the

Debtor's continued use of Cash Collateral; and an interim hearing having been held by this Court

on February _____, 2025; and upon the record of the hearing; and after due deliberation and cause

appearing therefor;

FOUND AND DETERMINED THAT[6]:

A.    On February 4, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of New York (the "Court").

B.    The Debtor remains in possession of its assets and continues to manage and operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and rule-based predicates for the relief requested herein are sections 105, 361 and 363 of the Bankruptcy Code and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

D.    Pursuant to Bankruptcy Rule 4001(b)(2), an interim hearing on the Motion was held by the Court on February _____, 2025.

E.    After consultation with its attorneys and financial advisors, but without prejudice to the rights of parties in interest as set forth in paragraph 10 below, the Debtor admits, stipulates, acknowledges and agrees as follows (collectively paragraphs E(i) through E(v) below shall be referred to herein as the "Debtor's Stipulations"):

      (i)    Debtor and Pursuit Lending ("Pursuit")_are parties to certain Loan

---

[6] The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014.  To the extent any of the following findings constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Documents, that provide for loans and letters of credit aggregating approximately $2,000.00 as of the date of filing; and

(ii)    As of the Petition Date, Debtor and SBA are parties to certain Loan Documents, that provide for loans aggregating approximately $327,000.00 as of the date of filing;

(iii)    Performance of the Debtor's Pre-Petition obligations with respect to these agreements, are secured by, among other things, a blanket lien on all of the Debtor's personal property and assets (the "Pre-Petition Collateral").

(iv)    Each of the liens on the Pre-Petition Collateral securing the junior liens and the repayment of the Debtor's obligations thereunder, are subordinated to the performance in full of the Debtor's obligations under the Pursuit and SBA loans.

F.    Good cause has been shown for the immediate entry and effectiveness of this Interim Order pursuant to Bankruptcy Rule 4001(b).

G.    Notice of the Motion, the relief requested by the Motion, and the interim hearing was provided in advance of the interim hearing to (a) the United States Trustee for the Northern District of New York (the "U.S. Trustee"); (b) Pursuit; (c) SBA; (e) the Subchapter V Trustee; and (f) all other Purported Pre-petition Secured Creditors. The foregoing notice was adequate under the circumstances.

H.    An immediate need exists for the Debtor to use accounts receivable and inventory and other "cash collateral" as defined in section 363(a) of the Bankruptcy Code including any and all Pre-Petition and post-petition proceeds of the Collateral (the "Cash Collateral").

I.    As Adequate Protection for Pursuit's first lien, (i) the Debtor shall make adequate protection payments to Pursuit in the monthly contractual amount of $XXXX; and (iii) the Debtor shall provide Pursuit with certain reporting as set forth herein.

J.    As Adequate Protection for SBA's second lien, (i) the Debtor shall make adequate protection payments to SBA in the monthly amount of $XXXX; and (iii) the Debtor shall provide SBA with certain reporting as set forth herein.

K.    The Adequate Protection is (i) reasonable and sufficient to protect the interests of the Pursuit and SBA, (ii) consistent with and authorized by the Bankruptcy Code, and (iii) necessary to obtain the consent of Pursuit and SBA.

L.    Good cause has been shown for the immediate entry and effectiveness of this Interim Order pursuant to Bankruptcy Rule 4001(b).

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    All of the findings of fact and Debtor's Stipulations set forth above are incorporated by reference in this Interim Order.

2.    Motion Granted. The Motion is granted on the terms and conditions set forth in this Interim Order. Any objections or responses to the relief requested in the Motion that have not been previously withdrawn, waived, or settled, and all reservations of rights included in such objections and responses, are hereby overruled on the merits and denied with prejudice or, to the extent applicable, deferred until the hearing on any successive interim or Final Order. The rights of all parties to object to entry of any successive Interim or Final Orders are reserved.

3.    Use of Cash Collateral. The Debtor is authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use of Cash Collateral through and including March _____, 2025, in accordance with the Budget attached hereto as Exhibit 1. The Debtor shall not, without the prior written consent of Pursuit and SBA, use Cash Collateral in an amount that exceeds any particular authorized line item by more than 15%, or in excess of 10% of the total Budget (the "Permitted Varaince") provided, however, that if the Debtor expends less than the budgeted amount for a line item in any given week, the expenditure of such unspent but budgeted funds in a subsequent week shall not be included in the calculation of any Permitted Variance. Following the term of the initial budget period for the purpose of this Interim Order, the Debtor shall be required to

provide a bi-weekly Budget to Pursuit and SBA for their respective review and approval.

4.      Adequate Protection. As adequate protection for the Debtor's use of the Cash

Collateral, Pursuit and SBA are granted, pursuant to sections 361, and 363(c)(2) of the

Bankruptcy Code, adequate protection of their interests in the Pre-Petition Collateral in an

amount equal to the aggregate diminution in the value of its interests in the Pre-Petition

Collateral, including, without limitation, any such diminution resulting from the Debtor's use of

the Cash Collateral, the imposition of the automatic stay pursuant to section 362 of the

Bankruptcy Code or otherwise as set forth herein (collectively, the "Adequate

Protection"):

a.      Reporting. The Debtor shall deliver to KeyBank:

1.   a biweekly budget, every second Friday;

2.   Adequate Protection Payments. Debtor shall remit monthly
payments in the amount of $XXXX, to Pursuit, said amount
representing the contractual principal and interest payment due to
Pursuit.

3.   Adequate Protection Payments. Debtor shall remit monthly
payments in the amount of $XXXX, to SBA, said amount
representing the approximate amount to which SBA has a security
interest in Debtor's cash and cash equivalents, with interest of 4%
amortized over 5-years.

b.      Continued Operation of the Debtor's Business, The Purported Pre-petition Secured

Creditors will be additionally protected as a result of the continued operation of the Debtor's·

business operations.

c.   <u>Additional Adequate Protection.</u> The Purported Pre-Petition Secured Creditors may request additional adequate protection from time to time with respect to the Pre-Petition Collateral, including the Cash Collateral. Nothing contained in this Interim Order shall constitute, or shall be deemed to constitute, an admission by the Purported Pre-Petition Secured Creditors that their interests are adequately protected within the meaning of Section 361 of the Bankruptcy Code on the date of this Interim Order or at any future date, and the Purported Pre-petition Secured Creditors' rights are reserved to claim that the provisions of this Interim Order do or do not constitute adequate protection of their interests in the Pre-petition Collateral. The Purported Pre-petition Secured Creditors shall be entitled to such other adequate protection as may be reasonably agreed upon by the Purported Pre-petition Secured Creditors and the Debtor and approved by this Court or otherwise granted by this Court.

5.     <u>No Surcharge.</u> Subject to the entry of a Final Order, without the prior written consent of the SBA and Pursuit, there shall not be any surcharge to the Pre-Petition Collateral pursuant to section 506(c) of the Bankruptcy Code.

6.     <u>Automatic Stay.</u> This Interim Order shall be without prejudice to the Purported Pre-petition Secured Creditors' right to seek relief from the automatic stay under Section 362 of the Bankruptcy Code on any basis at any time upon notice to the Debtor and this Court. Subject to Section 362 of the Bankruptcy Code, this Stipulation does not and shall not constitute a waiver by the Pre-Petition Secured Creditors of any right which they may have with respect to the Pre-Petition Collateral or other property of the Debtor or its estate, including, without limitation, their rights as secured parties under their respective loan documents, the Uniform Commercial Code, and other applicable law. The automatic stay imposed by § 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to effectuate the requirements of this Interim Order.

7.    <u>Carve-Out.</u> Any Rollover Liens for additional adequate protection granted by the
Court in any subsequent Interim or Final Order shall be subject to a <u>"Carve-Out",</u> which term
shall mean an amount sufficient to satisfy (i) allowed and unpaid professional fees and
disbursements incurred by Administrative Creditors of the Estate, including the Subchapter V
Trustee and Boyle Legal, LLC as counsel to the Debtor <u>("Boyle")</u> not in excess of $25,000.

8.    <u>Lien Challenge.</u>    The rights of any creditor, party in interest or creditors'
committee to dispute or challenge the validity, perfection, extent, amount and priority of the
Pre-petition Secured Creditors' claims and liens (collectively, a <u>"Lien Challenge")</u> and/or the
right to dispute the Pre-Petition Secured Creditors' right to any Adequate Protection authorized
under this Interim Order are expressly preserved for thirty (30) days from the date that counsel
for a creditors' committee has been retained, if a creditors' committee is formed, and all other
parties in interest (including the Debtor) are preserved after entry of any successive interim order
or Final Order (whichever is earlier) (the "<u>Lien Challenge Deadline</u>") unless and until otherwise
ordered by the Court. Notwithstanding anything to the contrary in this Interim Order, no Pre-
Petition Collateral or Post-petition Collateral, including any Cash Collateral, shall be used in any
manner to challenge or attempt to avoid the Pre-Petition Secured Creditors' claims against the
Debtor under or pursuant to this Interim Order or any of their respective loan documents, nor
shall it be used to challenge or attempt to avoid the validity, perfection, or priority of any security
interests, liens, assignments, or pledges granted or made by the Debtor to the Purported Pre-
petition Secured Creditors under or pursuant to this Interim Order or any of their respective loan
documents, provided, however, that all rights of the Debtor, any creditor, or any party in interest,
including any creditors committee, to investigate and challenge any claim or lien asserted against
the Debtor or any of its property or assets are hereby reserved in all respects.

9.    <u>Termination.</u> In the absence of a further order of the Court, the Debtor's

authorization to use the Cash Collateral shall automatically terminate on any of the following events of default:

     a.  the Debtor's material breach of any of the terms or provisions of this Interim Order, including providing the Adequate Protection as set forth herein, and the failure of the Debtor to cure such breach within seven (7) days of receiving notice of same; e-mail notification sent to Debtor's counsel shall be sufficient notice of an event of default hereunder;

     b.  the Debtor making of a payment that was not approved by Pursuit and SBA outside of the Permitted Variance approved Budget (other than a payment which does not result in the Debtor exceeding the Permitted Variance) or, for a payment outside of the Budget, not approved by Pursuit and SBA with its prior written consent to such payment;

     c.  any stay, reversal, vacatur or rescission of the terms of this Interim Order;

     d.  Debtor's actual cash disbursements vary from the approved Budget in excess of the Permitted Variance;

     e.  entry of an order by this Court dismissing the Debtor's Chapter 11 Case or converting the Debtor's Chapter 11 Case to cases under chapter 7 of the Bankruptcy Code;

     f.  the appointment of a chapter 11 operating trustee; or

     g.  the Court shall not have entered a subsequent interim or Final Order by March ____, 2025.

After the occurrence of any event of default, the Debtor shall be permitted to seek Court authority, after notice and a hearing, to use the Cash Collateral or other property of the Debtor;

provided, however, that the Purported Pre-petition Secured Creditors shall have the right to

object to such use.

10.     <u>Good Cause.</u> Good cause has been shown for the entry of this Interim Order.

Among other things, entry of this Interim Order will permit the Debtor to continue operating its

business and pay their continuing expenses and employee expenses.

11.     <u>Good Faith.</u> The Adequate Protection granted herein has been negotiated in good

faith and the terms of such Adequate Protection are fair and reasonable under the circumstances,

reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties and

are supported by reasonably equivalent value and fair consideration.

12.     <u>Best Interests of the Debtor and its Estate.</u> The Debtor requested emergency relief

pursuant to Bankruptcy Rule 4001. The authority granted hereby to use Cash Collateral and to grant

the Adequate Protection set forth herein is vital to avoid irreparable harm to the Debtor and its

estate. Entry of this Interim Order is in the best interests of the Debtor and their estates and creditors

as its implementation will, among other things, allow for the continued operation of the Debtor's

existing businesses.

13.     <u>Notice.</u> In light of the circumstances, due and sufficient notice of the Motion was

given.

14.     <u>No Other Liens.</u> Unless otherwise provided by further order of the Court, and

except as otherwise expressly provided herein, the Debtor shall be enjoined and prohibited from

at any time during the Chapter 11 case from granting voluntary liens in the Collateral, the Post-

petition Collateral or any portion thereof to any other parties pursuant to § 364(d) of the

Bankruptcy Code or otherwise.

15.     <u>Section 552(b).</u> Subject to entry of any successive interim order or the Final Order

(whichever is earlier), the Purported Pre-Petition Secured Creditors shall be entitled to all of the

rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case"

exception under section 552(b) of the Bankruptcy Code shall not apply to the Pre-Petition

Secured Creditors with respect to proceeds, products, offspring, or profits of any of the Pre-

Petition Collateral.

16.    <u>No Effect on Intercreditor Rights.</u> This Interim Order shall not in any way affect

or impair the relative priority, rights, claims or interests between and among the Pre-Petition

Secured Creditors.

17.    <u>Survival; Successors and Assigns.</u> Unless otherwise set forth herein, the provisions

of this Interim Order shall be binding upon and inure to the benefit of the Pre-Petition Secured

Creditors, the Debtor and their respective successors and assigns (including, to the extent

permitted by applicable law, any chapter 7 or chapter 11 trustee or other fiduciary hereafter

appointed or elected for the estate or as a legal representative of the Debtor or with respect to the

property of the estate of the Debtor). If an order dismissing these Chapter 11 Cases under§ 1112

of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in

accordance with sections 105 and 349 of the Bankruptcy Code) that the Rollover Liens and other

protections afforded or granted to the Pre-Petition Secured Creditors pursuant to this Interim

Order as of the date of such dismissal shall continue in full force and effect and shall maintain

their priorities as provided in this Interim Order until all obligations in respect thereof shall have

been paid and satisfied in full (and that such Rollover Liens and other protections, shall,

notwithstanding such dismissal, remain binding on all parties in interest). Notwithstanding any

reversal, stay, modification or vacatur of this Interim Order, any use of the Cash Collateral prior

to such reversal, stay, modification or vacatur shall be governed in all respects by the original

provisions of this Interim Order, and the Pre-Petition Secured Creditors shall be entitled to all the

rights, remedies, privileges and benefits granted herein with respect to such use. The Rollover

Liens shall not be discharged by the entry of an order confirming a chapter 11 plan in any of the

Debtor's Chapter 11 Case.

18.     <u>Immediate Effect.</u> This Interim Order shall constitute the Court's findings of fact

and conclusions of law and shall take effect immediately upon execution hereof.

19.          <u>Subsequent Hearings.</u> An further hearing shall be held on the Motion on February

_____, 2025 at 10:30 a.m. prevailing Eastern Time. Any objections or responses to

the Motion or to entry of a Final Order shall be filed and served no later than <u>seven days before</u>

the Final Hearing and shall be served upon the Court and the following parties: (i) the Debtor, c/o

Boyle Legal LLC, 64 2nd Street, Troy, NY 12180; (ii) the office of the United States Trustee for

the Northern District of New York; (iii) counsel for the Prepetition Secured Creditors; and (iv)

counsel to any statutory committee appointed in this Chapter 11 Case or, if no such committee

has been appointed, the Debtor's twenty (20) largest unsecured creditors as set forth in the

consolidated list filed with the Debtor's petition; and (v) any other party appearing in these

Chapter 11 Cases and requesting service pursuant to Bankruptcy Rule 2002. In the event no

objections or responses are timely filed and served in accordance with the foregoing, the Court

may enter a Final Order without need for the final hearing.

20.     <u>Service.</u> The Debtor shall serve a copy of the Motion, this Order, and notice of the

Interim Hearing and Final Hearing upon the parties identified in paragraph 25 of the Motion

by depositing the same in first class mail, postage prepaid, not later than the second business day

following entry of this Interim Order.

21.     <u>Retention of Jurisdiction.</u>  The Court shall retain jurisdiction to hear and

determine all matters arising from or related to the implementation of this Interim Order.

## EXHIBIT 1 TO INTERIM ORDER: MONTHLY BUDGET OF DEBTOR

| Payroll & Related: | Cost & Frequency (monthly) |
|---|---|
| Salaries and related withholdings | $20,000.00 |
| Secured Loan Payment (Pursuit) | $663.62 |
| Administrative Set Aside (Sub V Trustee/Counsel Fees) | $1,000.00 |
| Bank Fees | $100.00 |
| Insurance | $400.00 |
| Inventory | $30,000.00 |
| Marketing Advertising Website Hosting / SEO | $2500.00 |
| Supplies | $500.00 |
| Software/Subscriptions | $450.00 |
| Phone/Internet | $850.00 |
| Postage/Shipping | $200.00 |
| Rent | $3800.00 |
| Secured SBA | $XXX.XX |
| Bookkeeping | $375.00 |
| Owner's Life Insurance | $138.00 |
| Tax Set Aside | $4,000.00 |
|  |  |
|  |  |
|  |  |
| Total | $XXXXX.XX |

###