UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

    Angela's Bridals, Inc.                                               Chapter 11
                                                    Case No. 25-
                              Debtor.

## DECLARATION OF JANET M. COOPER
## IN SUPPORT OF FIRST DAY RELIEF AND PETITION

I, Janet M. Cooper, hereby declare the following under penalty of perjury:

1.    I am President and Sole Shareholder of the Debtor in the above-captioned proceeding.

2.    The Debtor was formed on June 2, 2008 and began doing business thereafter.

3.    The Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of Tile 11 of the United States Code (hereinafter the "Bankruptcy Code") on February 4, 2025.

4.    I submit this declaration to assist this Court and the parties-in-interest in understanding: (a) the circumstances leading to the commencement of this Chapter 11 case; (b) the business structure of the Debtor; and (c) the Debtor's prepetition debt.

5.    Additionally, I submit this declaration in support of: (a) the Debtor's petition for relief under the United States Bankruptcy Code; and (b) the "first day" relief the Debtor has requested pursuant to the motions and applications also filed on the date hereof.

6.    Except as otherwise indicated herein, all facts set forth in this declaration are based on my personal knowledge as Managing Member and President. If called upon to testify, I would testify competently to the facts set forth herein.

## Background

7.    The Debtor was formed in June, 2008.

8. As of the Petition date, the Debtor employs four (4) employees, including/excluding myself. Employees are paid hourly/salary/mixed.

9. Debtor anticipates needing to maintain its workforce during the course of reorganization, but, as of the time of filing, is assessing its fleet of vehicles as well as employment structure to identify ways to reduce overhead.

10. The Debtor's revenue is derived from fees earned from bridal dress sales and alterations.

11. As of the Petition Date, the Debtor's combined assets aggregate approximately $110,000.00. The Debtor's combined liabilities aggregate approximately $592,000.00, with approximately $329,000.00 in secured debt, approximately $51,000.00 in priority tax and wage debt, and approximately $212,000.00 in general unsecured debt.

## Events Leading up to Chapter 11

12. In or around December 2024, the Debtor retained Boyle Legal, LLC ("Boyle") to assess its financial situation and make a recommendation as to whether filing for bankruptcy protection would be in the best interest of the Debtor, its clients, and its creditors. Ultimately, Boyle and the Debtor's management determined that seeking protection under chapter 11 of the Bankruptcy Code would be the best means for the Debtors to obtain relief from its numerous debts and allow it to successfully restructure its business debt payments through either reducing its business offerings, and thus reducing overhead, or through liquidating its business and reducing maximizing liquidation payouts to its creditors.

13. Debtor provides dress sales and alterations with a focus on bridal gowns and weddings.

14. Notwithstanding Debtor's history as a preeminent bridal shop in the Capital Region, like many retailers, Debtor was significantly impacted by COVID and has been fighting to regain footing ever since.

15. Prior to its current location, Debtor was located in downtown Troy, New York.

16. That location proved to be an unmitigated disaster for the Debtor, including issues of quiet enjoyment and general disrepair on the part of Debtor's then landlord.

17. The issues surrounding that property culminated in litigation by and between that landlord and the Debtor beginning in April 2021 and lasting until January, 2023..

18. While that action ultimately settled, the costs of litigation and relocation were significant and Debtor has been struggling to regain footing since then.

19. Debtor attempted to mitigate the damage by increasing marketing and advertising efforts; however, to meet the demands of its overhead, Debtor participated in multiple transactions with various MCA ("Merchant Cash Advance") entities.

20. Debtor went the MCA route after exhausting its traditional financing options.

21. Debtor's goals in this bankruptcy are to maintain necessary workforce and assets and maintain ongoing operations in order to cashflow positive and survive the restructuring process.

22. Debtor believes based on its current workload, that it can successfully restructure; however, Debtor requires immediate bankruptcy relief in order to keep its creditors at bay while it formulates a plan of reorganization.

**The First Day Motions**

a. **Application to Shorten Time**

11. Pursuant to its Application to Shorten Time, the Debtor seeks an order allowing its First Day Motions to be heard on shortened notice.

12. A shortened notice period is essential to maintaining the viability of the Debtor's business given the ongoing business obligations it has including: cash collateral, insurance,

payroll, and banking practice considerations.

**b.    Motion of Debtor for an Order Authorizing Continuation of Various Insurance Policies and Payment of Prepetition Obligations Incurred in the Ordinary Course of Business in Connection, if any, therewith and Preventing Insurance Companies from Giving any Notice of Termination or Otherwise Modifying any Insurance Policy Without First Obtaining Relief from the Automatic Stay**

13.    The nature of Debtor's operations makes it essential to maintain adequate insurance programs on an ongoing and uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under any of the Debtor's insurance programs could result in cancellation of existing policies, declining to renew insurance policies or refusing to enter into new insurance agreements in the future.

14.    In the ordinary course of its business, the Debtor maintains insurance policies, including general liability and workers' compensation.

15.    The Debtor pays approximately $400.00 monthly for these ongoing insurance policies. In addition, in the ordinary course of business, retroactive adjustments are occasionally made with respect to the insurance policies. The insurance policies are paid in monthly installments and are renewed annually in the ordinary course of business.

16.    Based upon the Debtor's need for insurance coverage in the operation of their business, the Debtor respectfully requests the Court allow it to continue to pay these amounts as an ongoing concern.

**c.    Motion of Debtor for Entry of an Order Authorizing Continued Use of Existing Bank Accounts**

17.    In the ordinary course of business, Debtor maintains its business bank accounts with Broadview FCU.

18.    Prior to the commencement of this Case, in anticipation of having to establish a "Debtor-

in-Possession" Account, Debtor established a new Operating Account with Trustco Bank.

19. I understand Trustco Bank is an approved depository of the United States Trustee's office.

20. I also understand that upon the filing of a petition for relief, a Debtor-in-Possession traditionally establishes all new Debtor-in-Possession bank accounts.

21. I would respectfully request the Court allow the Debtor to maintain its current Account with Trustco as a shutdown of same would interrupt significant services and financial transactions of the Debtor.

22. Debtor proposes to maintain its bank account with Trustco and to have Trustco designate same as Debtor-in-Possession accounts pursuant to the operating guidelines set down by the United States Trustee's Office.

23. Debtor fears that interruption of this *status quo* will result in irreparable harm to the Debtor and its ability to maintain ongoing operations.

**d.    Motion to Utilize Cash Collateral**

24. At the time of filing, Debtor's cash and cash equivalents are purportedly encumbered by various entities.

25. Upon information and belief, Pursuit Lending is in first position with Debtor's collateralized cash and are owed approximately $2,000.00.

26. Upon information and belief, the Small Business Administration is in second position with Debtor's collateralized cash and are owed approximately $327,000.00.

27. While Debtor has other UCC creditors, upon information and belief, its cash and cash equivalents do not exceed $329,000.00 and thus, those remaining UCC creditors are wholly unsecured as it relates to Debtor's cash position.

28. At the time of filing, Debtor's cash equivalent at the time of filing is approximately $56,000.00. As such, Debtor has no unencumbered cash.

29. It is absolutely essential for Debtor's short- and long-term ongoing operations to be able to utilize its cash on hand and collected receivables in order to maintain post-petition obligations, including payroll, insurance payments, and operating costs/overhead.

30. Without access to this cash, Debtor cannot survive.

31. Debtor has proposed ongoing adequate protection payments to Pursuit and SBA in the form of ongoing monthly payments, periodic reporting, and replacement liens, as necessary.

32. As such, equity dictates that Debtor be able to utilize cash collateral to cover necessary and reasonable ongoing expenses, certain pre-petition prioritized expenses, and that the adequate protection proposed and articulated by Debtor in its motion to use cash collateral, is sufficient to protect the interests of Debtor's secured Creditors.

e. **Motion to Pay Prepetition Workforce Claims**

34. In the ordinary course of business, Debtor employs four (4) employees, including myself, compensated at mixed rates of hourly and salary.

35. The Debtor pays its employees one week in arrears. For example, the last paycheck issued by Debtor on January 31, 2025 to its employees covered a wage period ending January 25, 2025.

36. As such, as of the time of filing, Debtor owes its employees for wages earned from January 26 until the Petition Date.

37. Debtor's workforce is small, specialized, and critical for the survival of its current ongoing operations.

38. Debtor's employees are loyal and hardworking and it is critical Debtor be granted the ability to pay them for their modest pre-petition services.

39. No employee is owed more than the prioritized wage limit.

**f.     Application to Employ Boyle Legal**

40. Debtor desires to employ Boyle Legal, LLC to represent its interest in this Proceeding. Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: February 4, 2025            /s/Janet M. Cooper
                                    Janet M. Cooper, President
                                    Debtor and Debtor-in-Possession
                                    *Angela's Bridals, Inc.*